NOT FOR PUBLICATION                                                            [23, 30]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Civil Action No. 03-cr-495 (FLW) |
|              Plaintiff, | : | |
|     v. | : | |
| ANTHONY PODSADA, | : | **MEMORANDUM OPINION** |
|              Defendant. | : | |

**WOLFSON, District Judge**

      Presently before the Court are two Motions by Defendant, pro se, Anthony Podsada ("Mr. Podsada"). On May 23, 2006, Defendant filed a motion requresting that this Court vacate his conviction and grant him a new trial pursuant to Fed. R. Crim. P. 33(b)(1) on the grounds that new evidence suggests that his first attorney, John Fahy Esq., was acting under a conflict of interest. In addition, on July 12, 2006, Defendant filed a motion to have his original plea agreement reviewed by a forensic examiner. For the reasons set forth below, Defendant's motions are denied.

**I. BACKGROUND**

      In or about February 2003, the United States contacted John Fahy ("Mr. Fahy") Esq.,

Defendant's first attorney, regarding a possible disposition of the tax evasion case pending against the Defendant. United States Letter in Opposition to Defendant's Mot. for Forensic Examination of Plea Agreement ("U.S. Opp. to Def.'s FE Mot.") at 5. On February 6, 2003, the United States transmitted a plea agreement to Mr. Fahy, which referenced a one count information for tax evasion during 1995. Id. Defendant did not accept this initial plea agreement and, as a result, the Government decided to pursue three charges against the Defendant for evasion of taxes. Id.

On May 20, 2003, the United States transmitted a second plea agreement to Mr. Fahy. Id. This second plea agreement referenced a three-count information charging evasion of taxes for the years 1995, 1996 and 1997. Id. Defendant accepted this agreement and was prepared to sign it in early June, 2003. On June 3, 2003, Defendant and Mr. Fahy erroneously signed the February 6, 2003 Guilty Plea Agreement. Id. However, on that same day, June 3, Defendant eventually signed the correct agreement dated May 20, 2003. Id. On the following day, Mr. Fahy also signed the correct May 20th agreement. Id.

Thereafter, on July 2, 2003, in open court, on the record, Defendant pled guilty to tax evasion in connection with failing to report all his taxable income on his 1995 U.S. Individual Income Tax Return in violation of 26 U.S.C. § 7201. United States Opposition Brief to Defendant's 33(b)(1) Motion ("U.S. Opp. Br. to Def.'s 33(b)(1) Mot."). Specifically, Mr. Podsada did not report approximately $357,567 in taxable income that he received from the sale of autographed sports memorabilia during the year 1995. Id. The Court engaged in a full Fed. R. Crim. P. 11 colloquy. See generally Transcript of July 2, 2003 Plea Hearing ("Plea Tr."). After being satisfied that Defendant fully understood his rights, I found that the Defendant was

competent to enter a plea, and voluntarily did so, and I accepted the plea. Plea Tr. 31-32. As a result of his guilty plea, on November 12, 2003, I sentenced Mr. Podsada to fifteen months confinement and three years supervised release.

Subsequently, Defendant hired a new attorney, Christopher Grillo, Esq. On January 16, 2004, Mr. Grillo filed a Motion for Bail Pending Appeal on behalf of the Defendant in which he alleged that he needed additional time "to determine whether prior counsel had a conflict in this matter, inter alia that prior counsel's wife was an IRS agent who supervised agents and/or this investigation." USA Br. in Opposition to Def.'s Motion Alleging Attorney Conflict of Interest ("USA Opp. Br. to Def's Attorney Conflict"), Ex. E at ¶ 8. I denied Mr. Podsada's Motion for Bail Pending Appeal. On May 3, 2004, the Third Circuit Court of Appeals dismissed Podsada's appeal with the agreement of the parties.

On May 23, 2006, Mr. Podsada, pro se, filed the instant motion to "Overturn his Conviction Based on Attorney Conflict of Interest" pursuant to Fed. R. Crim. P. 33. In addition, on July 12, 2006, Mr. Podsada filed a motion to have the original plea agreement examined by a forensic examiner.

## II. DISCUSSION

<u>1. Defendant's Motion Pursuant to Fed. R. Crim. P. 33</u>

On May 23, 2006, Defendant filed the instant motion to overturn his conviction based on an alleged attorney conflict of interest. Specifically, Defendant contends that newly discovered evidence reveals that throughout his representation by Mr. Fahy, including the time in which Defendant was deciding whether or not to enter a plea or proceed to trial, Mr. Fahy was laboring

3

under a conflict of interest and thus could not provide Defendant with effective representation. To that end, Defendant argues that a conflict of interest comprises newly discovered evidence requiring a new trial. The United States, on the other hand, argues that Fed. R. Crim. P. 33 only governs situations in which a trial has occurred. In the instant matter, Defendant pled guilty and waived his right to a trial. Thus, the United States contends that because Defendant did not have an initial trial, he has waived his right to seek a new trial under Rule 33. The Court agrees.

Federal Rule of Criminal Procedure 33 establishes that a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Moreover, Rule 33 provides that "any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilt." Fed. R. Crim. P. 33(b). However, it is well-established that the use of Rule 33 is confined to those situations in which a trial has occurred. United States v. Graciani, 61 F.3d 70, 78 (1st Cir. 1995)("By its express terms, Rule 33 is confined to those situations in which a trial has been had."); see also Williams v. United States, 290 F.2d 217, 218 (5th Cir. 1961) ("Rule 33 of the Federal Rules of Criminal Procedure, which authorizes motions for a new trial, applies only to cases in which a trial, either to the court or to a jury, has taken place."). "A defendant who enters a guilty plea cannot thereafter use Rule 33 as a wedge to undo his acknowledgment that he committed the offense." Graciani, 61 F.3d at 78.

On July 2, 2003, Defendant entered a plea of guilty to knowingly and willfully attempting to evade taxes in the year 1995. Indeed, Defendant did not proceed to trial in this matter, and, at a plea hearing on July 2, Defendant provided sworn testimony acknowledging that by pleading guilty, he had waived his right to a trial. Specifically, at the plea hearing, I asked the Defendant

whether he understood "that by entering a plea of guilty, and if that plea is accepted by me...there will be no trial." Plea Tr. 25:21-23. Defendant responded in the affirmative. Id. 25:24. Moreover, I questioned Mr. Podsada whether he understood that by pleading guilty "[y]ou will have waived or given up your right to a trial as well as all of the other rights that I just listed to you a moment ago which are associated with the trial?" Id. 25:25- 26:3. In response, Mr. Podsada answered, "I do, your Honor." Id. 26:4. As noted above, Fed. R. Crim. P. 33 cannot be invoked to undermine a conviction predicated upon a guilty plea; because Mr. Podsada pled guilty in this matter, I find that Defendant is barred from seeking relief pursuant to Rule 33.

Morever, even if Mr. Podsada were not foreclosed from seeking relief under Rule 33, the Third Circuit Court of Appeals has held that Rule 33 is not the proper vehicle within which to bring claims of ineffective assistance of counsel. United States v. Derewal, 10 F.3d 100, 104 (3rd Cir. 1993)("[A] newly discovered evidence motion is at best a poorly suited vehicle for advancing an ineffective assistance of counsel claim.") In Derewal, the Third Circuit noted that in order to obtain relief based on counsel's ineffective assistance, a defendant must demonstrate that counsel's performance fell "outside the wide range of professionally competent assistance" and caused the defendant prejudice, i.e., deprived the defendant of "a trial whose result is reliable." Strickland v. Washington, 466 U.S. 668, 687, 690 (1984). In other words, a claim for ineffective assistance of counsel alleges that a reasonably competent attorney would have discovered some specific piece or body of evidence that would have altered the outcome of the trial. Id. Unlike a claim for ineffective assistance, however, a claim of newly discovered evidence is based on evidence that trial counsel could not have discovered with due diligence before trial. See United States v. Iannelli, 528 F.2d 1290, 1292 (3d Cir.1976). Thus, the Third

5

Circuit established that these two categories of evidence – evidence that a reasonably competent attorney would have discovered before trial and evidence that counsel could not have discovered before trial with due diligence – are mutually exclusive.  Derewal, 10 F.3d at 104.  Moreover, in Derewal, the Third Circuit suggested that, in general, newly discovered evidence must be evidence related to factual issues at trial, not evidence related to separate legal issues such as ineffective assistance of counsel. See id.  For these reasons, the Derewal Court held that claims for ineffective assistance of counsel are properly raised by way of a motion pursuant to 28 U.S.C. § 2255[1]. Id. at 105.

In the instant matter, although the Defendant has not set forth a motion for relief under 28 U.S.C. § 2255, the Court will sua sponte consider this motion as if it were brought within the proper procedural framework.  Section 2255 provides that a criminal defendant has one year within which to file a request for relief.  This period runs from the latest of the following events:

*(1) the date on which the judgment of conviction becomes final;*

---

[1] The Court notes that even if the Defendant could raise a claim under Rule 33, five requirements must be met before a trial court may order a new trial due to newly discovered evidence: (1) the evidence must be in fact newly discovered, i.e., discovered since trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.  U.S v. Iannelli, 528 F.2d at 1292.  In the instant matter, the Court finds that Defendant is not able to establish the necessary elements of this test. As noted above, on January 16, 2004, just two months after sentencing, Podsada's second attorney, Mr. Grillo, filed a motion for bail pending appeal.  In support of this motion, Mr. Grillo alleged that he needed "additional time to determine whether prior counsel had a conflict in this matter, inter alia that prior counsel's wife was an IRS agent who supervised agents and/or this investigation." USA Opp. Br. to Def's Attorney Conflict"), Ex. E at ¶ 8.  As Defendant was aware of this evidence more than two years ago, it would not constitute non-cumulative, newly discovered evidence that would produce an acquittal.

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

*(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.*

Id. (emphasis added). Thus, the applicable time limits within which Mr. Podsada could file his § 2255 motion are (1) one year after the conviction and judgment became final or (2) one year after the date on which the facts supporting his claim could have been discovered.

In the instant matter, the Third Circuit Court of Appeals dismissed Mr. Podsada's appeal on May 3, 2004. According to the Rules of the Supreme Court of the United States, a Defendant has 90 days within which to timely file an appeal of the Third Circuit's decision. Rules of the Supreme Court of the United States 13 ("Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals. . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment."). Therefore, Mr. Podsada had until August 1, 2004 to timely file an appeal and until August 1, 2005 to raise a motion pursuant to 28 U.S.C. § 2255. However, Mr. Podsada did not file his motion until May 23, 2006, almost a year afer the time limit expired.

The only other relevant time limit within which the Defendant could have brought a § 2255 motion would be one year after the date on which the facts supporting this claim could have been discovered. Here, Mr. Podsada filed a motion for bail pending appeal on January 16, 2004, in which he alleged that he needed time to determine whether Mr. Fahy, Defendant's initial counsel, was laboring under a conflict of interest. Thus, Defendant knew about this potential conflict of interest at that time, and, he had until January 16, 2005 to bring a motion pursuant to § 2255. As noted above, the instant motion for relief was filed on May 23, 2006. Therefore, I find that a motion for relief pursuant to 28 U.S.C. § 2255 is time-barred and I am dismissing Defendant's motion to overturn his conviction.

2. Defendant's Motion to Have Plea Agreement Examined by Forensic Examiner

On July 12, 2006, Defendant filed an additional motion requesting that this Court allow a forensic examiner to review his plea agreement. Defendant contends that the February 6, 2003, plea agreement attached to the United States Brief in Opposition to Defendant's Rule 33 Motion is different than the plea agreement pursuant to which Defendant pled guilty. For this reason, Defendant claims that one of the documents is forged and asks that this Court grant him a new trial. See Defendant's Emergency Motion Requesting to Have Original Plea Agreement(s) Forensically Examined ("Def's Forensic Mot.") at 6 ("[W]hy can't Your Honor declare, considering there are at least, now, two different Plea Agreements, with two different signature pages, purportedly Signed by me, both purportedly Dated on the same day 6/3/03 and yet prepared some 5 months Apart, allow me. . . to now have a New Trial, based on this

Information.").[2]

In response, the United States admits that it mistakenly appended a plea agreement dated February 6, 2003, to its Brief in Opposition to Defendant's Rule 33 Motion instead of the correct plea agreement dated May 20, 2003. See USA Opp. To Def's Forensic Mot. at 1-2. Indeed, the United States contends that Mr. Podsada and his attorney erroneously signed the February 6, 2003 agreement prior to properly signing the May 20, 2003 plea agreement. Moreover, the United States argues that despite attaching the wrong document to its Opposition Brief, Mr. Podsada pleaded guilty before this Court on July 2, 2003, and this Court accepted the May 20th plea as the operative document memorializing the final agreement between the parties. In addition, the United States contends that although the agreements had different dates, they were nearly identical. For these reasons, the United States argues that this Court should deny Mr. Podsada's Motion for Forensic Examination. The Court agrees.

To begin, the Court notes that Mr. Podsada has not cited any case law in support of his Motion for Forensic Examination and this Court has not found any case law that would support the instant motion. Moreover, the United States admitted that it had mistakenly appended the wrong agreement to its Brief and Mr. Podsada has not contested this explanation. Indeed,

---

[2] In addition, on July 28, 2006, the Defendant filed a Reply to his Motion for Forensic Examination of the Plea Agreement in which he argues that at the time of the plea his ability to understand the proceedings and to voluntarily plea were impaired because of medications that he was taking for Graves Disease. The Court does not agree. First, this Court was aware at the time of sentencing that Defendant suffered from Graves Disease. Indeed, the Court considered Plaintiff's physical ailments and determined that no departure was warranted because of them. Transcript of Nov. 12, 2003 Sentencing ("Sentencing Tr.") 6:11-18 & 17:20-23. Moreover, nothing that Defendant has provided to this Court indicates that his medications impaired his ability and competence to execute the plea. Thus, I hold that this is not sufficient reason to grant Defendant's Motion for Forensic Examination of the Plea.

despite Defendant's allegation that the May 20 plea agreement is not authentic, Def.'s Forensic Mot. at 2., Defendant has put forth no evidence in support of his contention. In fact, at the plea hearing, the Defendant provided sworn testimony to this Court that he did, in fact, sign the plea agreement dated May 20, 2003.

> THE COURT: As I said previously, I do have the original of the plea agreement here on the bench and I understand one has been entered into between the parties. Do you have the plea agreement there before you, a copy of it?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: Mr. DiLeonardo, would you summarize the terms of the plea agreement.
> Mr. DiLEONARDO: Yes, your Honor. The plea agreement is memorialized in a <u>document styled plea agreement with Anthony Podsada dated May 20th, 2003 and executed by the parties....</u>

Tr. 12:12-25 (emphasis added).

Furthermore, at the hearing, I specifically questioned Mr. Podsada about his signature on and understanding of the plea agreement.

> THE COURT: All right, Mr. Podsada, have you read the plea agreement in this matter?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: Did you have an opportunity to discuss the plea agreement with your attorney before you signed it?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: I have the original of the plea agreement. I believe you have a copy there before you. <u>Is it your signature that appears on the plea agreement</u>?
> THE DEFENDANT: <u>Yes, your Honor, it is.</u>
> THE COURT: That's dated June 3rd. Is that correct?
> THE DEFENDANT: That is correct, your Honor.
> THE COURT: Mr. Fahy, does your signature appear on that document as well?
> THE DEFENDANT: Yes, it does, Judge.
> THE COURT: Mr. DiLeonardo, does your signature appear?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: As well as that of Lee Solomon.
> MR. DiLEONARDO: Yes, your Honor.

Tr. 13-15. (emphasis added)

Thus, contrary to Defendant's claim that the May 20 agreement is not authentic, i.e. that he did not sign the agreement, the Court does not agree. Defendant has not provided any evidence to show that he did not sign the May 20, 2003 agreement. In fact, as discussed above, Defendant provided sworn testimony to this Court that he did sign the May 20th agreement. Moreover, Defendant has not put forth any evidence to contradict the United States' explanation that Defendant mistakenly signed the February 6, 2003 agreement prior to signing the May 20, 2003 agreement. Further, Defendant has not established that the inclusion of the February 6, 2003 agreement as an exhibit was anything but an accident by the United States Attorney.

Moreover, to the extent that Defendant is asking this Court to allow him to withdraw his Guilty Plea based on the alleged inconsistencies in the plea agreements and grant him a new trial, the Court will deny this Motion. In general, "[t]here is no absolute right to withdraw a guilty plea." United States v. Grant, 117 F.3d 788, 789 (5th Cir.1997). Prior to sentencing, "the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." Fed.R.Crim.P. 32(e)[3]. However, "the standard for withdrawal of a guilty plea after sentencing is considerably more stringent. A defendant seeking to withdraw a plea of guilty at the post-sentencing stage is obligated to show 'a fundamental defect which inherently results in a

---

[3]In 2002, Rule 32(e) of the Federal Rules of Criminal Procedure was transferred to Rule 11. According to the Advisory Committee, "[t]he language of Rule 11 has been amended and reorganized as part of the general restyling of the Criminal Rules to make them more easily understood and to make and style and terminology consistent throughout the rules. . . Amended Rule 11(e) is a new provision, taken from current Rule 32(e), that addresses the finality of a guilty or nolo contendere plea after the court imposes sentence." Notes of Advisory Committee on 2002 amendments to Fed. R. Crim. P. 11. Moreover, the Third Circuit has held that because the change to the Rules were stylistic and not substantive, "we are comfortable relying on precedent explaining the former Rule 32(e)." United States v. Maynard, 152 Fed. Appx. 191, 193 (October 24, 2005).

complete miscarriage of justice' or 'an omission inconsistent with the demands of fair procedure.' " United States v. Hoskins, 910 F.2d 309, 311 (5th Cir.1990)(quoting Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)).  In the instant matter, Defendant has not established any defect that resulted in a miscarriage of justice. Therefore, this Court denies Mr. Podsada's Motion for Forensic Examination with Prejudice.

### III. Conclusion

For the reasons set forth above, Defendant's Motions for a New Trial and for Forensic Examination are DENIED.  An appropriate order will follow.

Dated: August 16, 2006                                                /s/ Freda L. Wolfson
                                                                       Honorable Freda L. Wolfson
                                                                       United States District Judge